STRUBLE v LACKS INDUSTRIES, INC

Docket No. 89286. Submitted May 20, 1986, at Lansing. Decided August 11, 1986.

Patricia J. Struble, an employee of Lacks Industries, Inc., since 1977, was discharged in 1982 after her employer received three notices from customers that parts bearing Struble's inspection number were defective. Struble received a written warning following the first notice and a written warning and three-day suspension following the second notice. She was fired following the third notice. Struble filed suit against Lacks Industries, Inc., in Ingham Circuit Court, alleging that defendant violated an implied for-cause employment contract and departed from the established procedures for discipline and that defendant negligently discharged her. The court, Jack W. Warren, J., granted summary disposition in favor of defendant on the ground that the employment contract was terminable at will. Plaintiff appealed.

The Court of Appeals *held*:

1. Summary disposition should not have been granted as to plaintiff's allegation that defendant violated an implied for-cause employment contract and departed from the established procedures for discipline. It is for the jury to determine whether the contract was terminable at will or for just cause.

2. The count of negligent discharge was properly dismissed. Plaintiff's claims did not establish a separate cause of action for negligent discharge.

Affirmed in part and reversed in part.

REFERENCES

Am Jur 2d, Master and Servant §§ 14, 34, 43 *et seq.;* 70.

Am Jur 2d, Negligence §§ 47-50.

Damages recoverable for wrongful discharge of at-will employee. 44 ALR4th 1131.

Right to discharge allegedly "at-will" employee as affected by employer's promulgation of employment policies as to discharge. 33 ALR4th 120.

See also the annotations in the Index to Annotations under Contracts.

1. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION
     FOR JUST CAUSE — IMPLIED CONTRACTS.

   An employer which makes statements in employee policy manuals or otherwise which give rise to the employees' legitimate expectation that they will be discharged only for just cause may be found liable under a theory of implied contract for discharging without cause.

2. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION
     FOR JUST CAUSE — IMPLIED CONTRACTS.

   An employee seeking to establish an implied contract wherein employment is terminable only for just cause must harbor a subjective, as well as an objective, expectancy of employment terminable for cause.

3. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — TERMINATION
     FOR JUST CAUSE — IMPLIED CONTRACTS — QUESTIONS OF FACT.

   The questions of whether an implied contract of employment was not terminable at will because of the employer's written policy manual and whether an employee had a subjective expectation that discharge would be only for just cause are for a trier of fact to determine; the question whether termination of employment was in breach of contract, i.e., whether an employee was discharged for cause and in compliance with applicable procedures, is also for the trier of fact as long as there is a genuine factual dispute.

4. MASTER AND SERVANT — EMPLOYMENT CONTRACTS — BREACH OF
     CONTRACT — NEGLIGENCE.

   A breach of an employment contract does not give rise to an action sounding in negligence when the breach of duty is indistinguishable from the breach of contract.

*Anderson, Hay & Wonch, P.C.* (by *Thomas H. Hay*), for plaintiff.

*Miller, Johnson, Snell & Cummiskey* (by *Jon G. March* and *Stuart R. Cohen*), for defendant.

Before: SHEPHERD, P.J., and ALLEN and G. R. COOK,* JJ.

PER CURIAM. Plaintiff appeals as of right from a

* Circuit judge, sitting on the Court of Appeals by assignment.

circuit court order granting defendant's motion for summary disposition pursuant to MCR 2.116(C)(8) and (10). We affirm the dismissal of Count II but reverse and remand for further proceedings as to Count I.

The present case arises from the termination of plaintiff's employment with the defendant, a producer of plastic automobile components. Defendant hired plaintiff in 1977 as a spray-painter. At that time and thereafter, defendant made no verbal promises of continuous employment terminable only for just cause and the plaintiff understood that the length of her employment was indefinite. However, when she was hired, plaintiff was given an employee handbook outlining defendant's policies and work rules. The handbook described the rules of conduct and a progressive system of discipline.

Plaintiff began working as an inspector-packer in late August, 1982. Inspector-packers visually examine completed auto parts and decide whether the product is acceptable for shipment to customers. Plaintiff used a labeling gun to stamp her identification number on each inspected part. On October 4, 1982, plaintiff's supervisor issued a written warning to plaintiff for "unsatisfactory work" under Article XI, rule 37, of the employee handbook. The reason for the warning was that a customer had sent a material complaint notice for defective parts bearing plaintiff's inspection number. On October 19, 1982, plaintiff received another written warning and a three-day suspension after defendant received a second customer complaint about defective parts inspected by plaintiff. While plaintiff was suspended, a customer sent a third complaint rejecting parts bearing plaintiff's inspection number. When plaintiff returned to

work on October 26, 1982, her supervisor fired her pursuant to Article xi of the employee handbook.

Plaintiff filed a two-count complaint on April 18, 1984. Count i alleged that defendant violated an implied for-cause employment contract and departed from the established procedures for discipline. Count ii charged that defendant negligently discharged plaintiff. Plaintiff claimed during deposition that her discharge was without cause because she had not approved the parts rejected by the customers. She claimed that supervisors normally went through the rejected parts and passed some of these parts. The rejected parts still bore the inspector's stamp. Plaintiff also claimed that defendant had applied the incorrect procedure when disciplining her. She felt defendant should have followed the "Quality Assurance Demerit Procedure" rather than the employee handbook.

Defendant moved for dismissal of Count i on the ground that no genuine issue of material fact existed as to whether plaintiff was employed under a just-cause contract. MCR 2.116(C)(10). Defendant also moved for dismissal of Count ii, arguing that plaintiff failed to state a claim upon which relief could be granted. MCR 2.116(C)(8). The trial court agreed that the employment contract was terminable at will rather than for just cause only and therefore granted summary disposition on both counts.

Plaintiff first argues on appeal that defendant's policy manual creates a factual basis for her claim of an implied contract for termination for cause only. Plaintiff claims that it is for the jury to determine whether the contract was terminable at will or for just cause. We agree.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the plaintiff's claim. The court must give the benefit of

any reasonable doubt to the party opposing the motion and grant the motion only if it is impossible for the claim to be supported at trial because of a deficiency which cannot be overcome. *Schwartz v Michigan Sugar Co,* 106 Mich App 471, 476; 308 NW2d 459 (1981), lv den 414 Mich 870 (1982).

Here, the defendant's employee manual supports plaintiff's claim that she could be discharged for cause only. In *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980), the Supreme Court held that when an employer makes statements in employee policy manuals or otherwise which give rise to the employees' legitimate expectation that they will be discharged only for just cause, the employer may be found liable under a theory of implied contract for discharging without cause. The Supreme Court stated:

> Employers are most assuredly free to enter into employment contracts terminable at will without assigning cause. We hold only that an employer's express agreement to terminate only for cause, or statements of company policy and procedure to that effect, can give rise to rights enforceable in contract. [*Id.,* 610.]

Article II, section A of the employee manual at issue in this cause defines "seniority" as "the length of an employee's continuous service in the employment of the Company." Article II, section E provides that seniority shall automatically terminate under seven enumerated circumstances, including "[d]ischarge for just cause." The employer's right to terminate at will is not listed. Article XI of the handbook sets forth the rules of employee conduct and establishes a progressive disciplinary procedure. The expressed purpose of the rules and

procedures is to secure order and efficiency in the factory and inform employees what kind of conduct is prohibited and what penalty to expect for engaging in such conduct. The handbook specifies over thirty-nine instances of impermissible conduct, including unsatisfactory work. For most offenses, the first offense will result in a written reprimand. Repetition of the same offense justifies suspension for three days, and a third offense will result in discharge.

Article XI contained the following reservation:

> The company reserves the option of imposing a lesser or greater penalty than that which is indicated, where the particular circumstances warrant or require it, in the Company's judgment.

Plaintiff testified during her deposition that she was aware of this paragraph and had participated in an attempt to have it changed through a union drive. She believed that the provision contradicted the policy of discharging employees only if they failed to perform their jobs with skill and ability. Plaintiff stated that the provision allowed the defendant to fire her at any time. The defendant's attorney sought to clarify the plaintiff's deposition testimony as follows:

> *Q.* Let me make sure I understand that. You were concerned about the paragraph that we just read into the record here because you understood it to give the Company the right to make its own judgment as to whether you would continue to be employed?
> *A.* Yes, regardless of our work record.

Defendant argued below and the trial court agreed that (1) the employee handbook does not establish a just cause contract because of the

above-quoted reservation and (2) plaintiff's own testimony showed that she had no expectation that she could be discharged for cause only. We disagree with these conclusions.

The reservation merely permits the defendant to use its own judgment to adjust the penalties under certain circumstances. It implies that the employee must still violate a rule of conduct before any penalty, including discharge, is imposed. Defendant is correct that an employee seeking to imply a contract terminable for just cause must harbor a subjective, as well as an objective, expectancy of employment terminable for cause to establish a *Toussaint* claim. *Longley v Blue Cross & Blue Shield of Michigan,* 136 Mich App 336, 340-341; 356 NW2d 20 (1984). However, plaintiff's interpretation and understanding of the provision, viewed in the light most favorable to plaintiff as we must do at this preliminary stage in the proceedings, did not amount to an admission that the contract was terminable at will. Instead she was concerned that the defendant could fire her without considering her past work record. Unlike the plaintiff in *Longley,* she did not state that the employer could discharge her with or without cause. On the contrary, the plaintiff testified that, based on the handbook, she believed that the defendant could fire her only for cause.

Here, as in *Toussaint,* it is for the trier of fact to determine whether the contract was not terminable at will because of the defendant's written policy manual and whether plaintiff had a subjective expectation that she would not be discharged except for just cause. The question whether termination was in breach of contract, i.e., whether plaintiff was discharged for cause and in compliance with applicable procedures, is also for the jury as long as there is a genuine factual dispute.

See *Toussaint, supra,* 620-621. Accordingly summary disposition should not have been granted as to Count I.

Plaintiff also argues that the trial court erred in granting summary disposition as to Count II for failure to state a valid claim. MCR 2.116(C)(8). Count II of plaintiff's complaint alleged that defendant negligently applied its policies and procedures when discharging her. Specifically she claimed that defendant was negligent in (1) failing to investigate the customer complaints to insure that plaintiff was responsible for the shipment of defective parts; (2) failing to consider plaintiff's excellent work record; (3) failing to impose a lesser penalty in light of plaintiff's past record; and (4) departing from the demerit system.

These claims do not establish a separate cause of action for negligent discharge. A breach of an employment contract does not give rise to an action sounding in negligence when the breach of duty is indistinguishable from the breach of contract. *Brewster v Martin Marietta Aluminum Sales, Inc,* 145 Mich App 641, 667-668; 378 NW2d 558 (1985). In essence, plaintiff is merely asserting that the defendant negligently fired her by breaching contractual promises arising from defendant's policies and procedures governing discipline. These facts are evidence in support of her breach of contract claim but do not establish a separate cause of action in tort. Accordingly, we conclude that the separate count for negligent discharge was properly dismissed.

Affirmed in part and reversed in part.